**C.O. LAW, APC**
Clark Ovruchesky, Esq. (SBN: 301844)
co@colawcalifornia.com
2404 Broadway, Suite 150
San Diego, California 92102
Telephone: (619) 356-8960
Facsimile:  (619) 330-7610

**OLYMPUS LAW CORPORATION**
George C. Panagiotou, Esq. (SBN: 263172)
2404 Broadway, Suite 100
San Diego, CA 92102
Telephone: (858) 300-0033
Facsimile:  (858) 408-2939

*Attorneys for Plaintiff*,
Juan R. Gutierrez

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUAN R. GUTIERREZ,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DEPARTMENT STORES NATIONAL BANK, BANK OF AMERICA, N.A., CHASE BANK USA, N.A., AMERICAN EXPRESS COMPANY, and EQUIFAX INFORMATION SERVICES LLC,**<br><br>**Defendants.** | Case No.: '20 CV 1036 L    JLB<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1.) **THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.; AND**<br><br>2.) **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE §§ 1785.1, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Plaintiff **JUAN R. GUTIERREZ** ("Plaintiff"), through his attorneys, brings this lawsuit to challenge the actions of Defendants **DEPARTMENT STORES NATIONAL BANK ("DSNB," "Furnisher-Defendants," and "Defendants"), BANK OF AMERICA, N.A. ("BANA," "Furnisher-Defendants," and "Defendants"), CHASE BANK USA, N.A. ("CHASE," "Furnisher-Defendants," and "Defendants"), AMERICAN EXPRESS COMPANY ("AMEX," "Furnisher-Defendants," and "Defendants") , and EQUIFAX INFORMATION SERVICES LLC("EQUIFAX," the "Credit Bureau," or "Defendants")** with regard to Defendants' reporting of erroneous negative and derogatory reports to Plaintiff's credit report, as that term is defined by 15 U.S.C. § 1681a(g) and Defendant's failure to correct such, which Defendant knew or should have known was erroneous and which caused Plaintiff damages.

3. Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendants occurred in California.

6. Any violations by Defendants were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of any Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state law claims.

9. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA") and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1. et seq. ("CCRAA").

10. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

11. Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Diego, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

## PARTIES

12. Plaintiff is a natural person who resides in the City of San Diego, County of San Diego, in the State of California. In addition, Plaintiff is a "consumer" as that term is defined by: Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

13. Defendant CHASE is a corporation, whose primary corporate address is in the City of Wilmington, in the State of Delaware, and is authorized to do business in the State of California.

14. Defendant AMEX is a corporation, whose primary corporate address is in the City of New York, in the State of New York, and is authorized to do business in the State of California.

15. Defendant DSNB is a corporation, whose primary corporate address is in the City of Sioux Falls, in the State of South Dakota, and is authorized to do business in the State of California.

16. Defendant BANA is a corporation whose primary corporate address is in the State of Texas, and is authorized to do business in the State of California.

17. Defendant EQUIFAX is a corporation whose primary corporate address is in the City of Atlanta, in the State of Georgia, and is authorized to do business in the State of California.

18. Furnisher-Defendants are each a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), which regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

19. Plaintiff is informed and believes, and thereon alleges, that Furnisher-Defendants in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and are each therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

20. EQUIFAX is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3.

21. The causes of action herein also pertain to Plaintiff's "consumer [credit] report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was reported by Defendants regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## GENERAL ALLEGATIONS

22. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

23. Furthermore, Defendant conducted business within the State of California at all times relevant.

24. On or about September 11, 2019, Plaintiff filed for a no-asset Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of California in San Diego. Plaintiff's case was assigned Case Number 19-05467 (the "Bankruptcy").[1]

25. Plaintiff's Bankruptcy successfully discharged on December 10, 2019, and Plaintiff's accounts and debts with Furnisher-Defendants were included in Plaintiff's discharge.

26. However, Furnisher-Defendants reported or caused to be reported inaccurate information after the Bankruptcy was filed and discharged on Plaintiff's credit reports.

---

[1] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See*, *Atwood v. Chase Manahttan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir.2003).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

27. The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[2]

28. Upon information and belief, Defendants have adopted the *Metro 2 Format Manual* as its standard instruction book in respect to credit reporting.

29. The CII status field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

30. CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

31. The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

32. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

33. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

///

///

///

///

///

_____

[2] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

34. Once a Chapter 7 Bankruptcy is successfully completed, furnishers for unsecured accounts included in the bankruptcy, including Furnisher-Defendants' accounts, are instructed to report the CII status as "Discharged/completed through BK Chapter 7", report "Current Balance", "Scheduled Monthly Payment Amount", and "Amount Past Due" as "Zero" (i.e. $0), and report "D", i.e. "no data", in the "Payment History" section.

35. Moreover, as a result of a major class action settlement in 2008, the three nationwide CRAs, including Equifax, have been required to revise their procedures as to how they report debts discharged in a chapter 7 bankruptcy.[3] The settlements essentially reverse the presumption of non-dischargeability that the CRAs had been applying to chapter 7 bankruptcies. They require the CRAs to treat all prebankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. The CRAs are to no longer report as charged off or placed in collection debts that in fact have been discharged in bankruptcy.

36. These procedures rely on the fact that furnishers are contractually obligated to report debts with codes that correspond to the major categories of non-dischargeable debt (that is, student loans, unpaid taxes, domestic support obligations, and debts subject to reaffirmation agreements). Using what is termed an "Agreed Bankruptcy Coding," the CRAs are to set to zero the stated balance owed for other debts—those that usually are dischargeable—*and* show them as having been discharged. This whole process is easily automated because the CRAs normally can ascertain from the information in their own

---

[3] *White v. EQUIFAX Info. Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number); *White v. Equifax Info. Serv.*, L.L.C., Case. No. CV 05-7821 (C.D. Cal. Aug. 19, 2008); *White v. Trans Union*, L.L.C., Case No. CV 05-1073 (Aug. 19, 2008); *Hernandez v. Equifax Info. Serv.*, L.L.C., Case. No. CV 06-3924 (C.D. Cal. Aug. 19, 2008).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

credit files when a consumer's prebankruptcy debt has not in fact been discharged.

37. These revised procedures and assumptions were applied both retroactively *and* prospectively. With respect to current credit files, the three major CRAs were directed to retroactively "scrub" existing data to remove improper tradelines and civil judgments.

38. Despite this reform, there continue to be problems with improper reporting of discharged debts, including allegations that creditors have deliberately engaged in the practice in order to pressure debtors to pay off discharged debts, and even refusals to correct the reporting after being requested to do so by the debtor.[4] Indeed, the frequency of cases in which debtors had complained of the failure to properly report accounts included in bankruptcy has led one court to observe the "sheer number of such cases may suggest that some creditors are systematically taking such action in an effort to diminish the value of a discharge in bankruptcy."[5]

39. However, despite this knowledge Furnisher-Defendants consistently followed faulty and deceptive procedures in their credit reporting practices for post-bankruptcy consumers like Plaintiff, EQUIFAX has continued to fail to adopt reasonable procedures to eliminate the reporting errors that it knew or should have reasonably been aware of.

---

[4] *See, e.g.*, *Belton v. GE Capital Consumer Lending* (*In re Belton*), 2014 WL 5819586 (Bankr. S.D.N.Y. Nov. 10, 2014). *See also* Jessica Silver Greenberg, Debts Canceled by Bankruptcy Still Mar Consumer Credit Scores, N.Y. Times, Nov. 12, 2014. *Keil v. Equifax Info. Serv.*, 2014 WL 4477610 (N.D. Cal. Sept. 10, 2014) (in response to debtor's dispute, credit union stated its policy was to report all charged-off debts as unpaid, irrespective of bankruptcy discharge); *In re Haynes*, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) (debtor alleged that creditor refused his request to remove charge-off notation from account discharged in bankruptcy).

[5] *Norman v. Applied Card Sys.* (*In re Norman*), 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

40. Moreover, EQUIFAX reported the Bankruptcy in the "Public Records" section of their credit report for Plaintiff at all times relevant, including the filing and discharge date. This further bolsters the claim that EQUIFAX failed to adopt reasonable procedures to ensure maximum possible accuracy because Furnisher-Defendants' accounts reported as being opened prior to the filing of the Bankruptcy.

41. The FCRA imposes obligations on CRAs relating to consumers who have filed petitions for bankruptcy that require such CRAs to report the particular chapter of Title 11 under which the petition was filed and that limit the amount of time they may report bankruptcy information to a maximum of ten years. 15 U.S.C. §§ 1681c. Nothing in this statutory provision of the FCRA suggests that there is an exception to a CRAs standard obligation to employ reasonable procedures to ensure maximum possible accuracy for bankruptcy-related information.[6]

42. Accordingly, EQUIFAX's conduct was willful and reckless disregard of their rights and obligations under the FCRA.

43. As explained in more detail below, Defendants failed to reference the bankruptcy filing and discharge in the "CII" credit reporting field in Plaintiff's EQUIFAX Credit Report in respect to Furnisher-Defendants' accounts successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

///

///

---

[6] *See also* 16 C.F.R. 600 app. § 607(3)(A)(6); *id.* § 607(3)(F)(2) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid)."); *id.* § 607(3)(F)(1) ("A consumer reporting agency must employ reasonable procedures to keep its file current on past due accounts (e.g., by requiring its creditors to notify the credit bureau when a previously past due account has been paid or discharged in bankruptcy)[.]"). *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1082 (C.D. Cal. 2006).

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

44. Instead, Defendants reported that the *current* (pay) status of the debts were delinquent, "Charged Off" i.e. still legally collectable, "Past Due", or otherwise still legally owed in their pre-Bankruptcy form as opposed to "Discharged/included in Bankruptcy" with a $0 balance.

45. The failure to report the correct status of "Discharged in Bankruptcy" inaccurately and misleadingly suggested that Plaintiff still has a personal legal responsibility to pay the alleged debts to Furnisher-Defendants, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

46. Furnishers utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores for consumers.

47. Moreover, the FCRA and CCRAA impose no requirement or mandate that a furnisher provide any information to a consumer reporting agency. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a consumer reporting agency is completely voluntary.[7]

48. Because credit reporting is a voluntary act, Defendants' deviation from the Metro 2 format instructions—the industry standard and their respective chosen method of reporting—constitutes an inaccurate or misleading statement. This is because those making credit decisions, who would expect that furnishers like Furnisher-Defendants would adhere to the Metro 2 format, would view the reporting of accounts included in the Bankruptcy in their delinquent pre-bankruptcy form more negatively than if the accounts reported accurately.

---

[7] *See, e.g.,* Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

49. In respect to their FCRA investigation, Plaintiff alleges Furnisher-Defendants, rather than train its employees how to properly review and investigate disputes, are generally expected to simply confirm whatever information being reported is accurate, rather than conducting an actual reasonable investigation.

50. Similarly, Plaintiff alleges EQUIFAX has a policy of simply parroting whatever information is provided by furnishers rather than conducting reasonable reinvestigations under the FCRA and CCRAA.

51. This is because the investigation and reinvestigations conducted by the Defendants occur in a hurried, conveyor-belt styled atmosphere in which dispute operators are under pressure to process disputes quickly to meet production quotas. This atmosphere is conducive to a speed-minded dispute operator failing to consider, or not looking for, information that is relevant to the consumer's dispute.

52. Such conduct by Defendants is willful and reckless.

53. Furthermore, the EQUIFAX's policies and procedures for maintaining and operating their internal databases were not reasonable, because they continued reporting patently inaccurate and materially misleading information after Plaintiff formally disputed the reporting. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

54. As a direct and proximate result of the derogatory information furnished and reported by Defendants, Plaintiff has sustained actual damages including emotional distress, humiliation, embarrassment, anxiety, loss of sleep, defamation of character, pain and suffering, was impeded in seeking necessary products and services from vendors, and damages to his credit rating.

///

///

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

55. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff has spent many hours and associated costs reviewing credit reports, disputing the incorrect information furnished by Defendants via certified mail, and incurred attorneys' fees and such further expenses in an amount to be determined at trial.

56. This has made Plaintiff unable and therefore averse to apply for credit because his credit score remains extremely low.

57. Plaintiff has also refrained from obtaining further credit knowing that Defendants' inaccurate reporting is appearing on his credit report.

58. This chilling effect has precluded Plaintiff from benefiting from Plaintiff's improving credit.

59. This chilling effect has also precluded Plaintiff from improving Plaintiff's credit further by establishing new positive accounts.

60. This inability has further exacerbated Plaintiff's frustration with Defendants since Plaintiff already made the difficult decision to file a bankruptcy in the first place.

61. Defendants' continued negative reporting has forced Plaintiff to unfairly suffer the burdens of a bankruptcy without any of the associated, and expected, benefits.

62. Namely, Plaintiff has been precluded from the fresh start that Plaintiff so desperately desires.

## DSNB
### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 702127133749* (THE "ACCOUNT")

63. In an EQUIFAX Credit Report dated February 17, 2020, DSNB reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Status: Account Charged Off

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

64. There was also no notation, status update, or any other indication in the tradeline as it was reported to EQUIFAX that this Account was included in or discharged in Plaintiff's Bankruptcy.

65. It was inaccurate and materially misleading for DSNB to report the above derogatory delinquencies related to Plaintiff's pre-Bankruptcy obligations after September 2019, because Plaintiff filed for Bankruptcy on September 11, 2019, at which point the automatic stay went into effect and severed DSNB's ability to enforce Plaintiff's purported pre-Bankruptcy obligations against Plaintiff personally in their pre-bankruptcy form.

66. The "Charge Off" and past due status notations by DSNB post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff was still legally liable to repay the alleged debt, incurred new debt during the Bankruptcy, or that Plaintiff reaffirmed the debt notwithstanding the discharge because DSNB's reporting deviated from Metro 2 reporting instructions in these respects.

67. However, Plaintiff did not incur new debt with DSNB during the Bankruptcy proceeding or reaffirm the Account in the Bankruptcy. Plaintiff's debt with DSNB was discharged in the Bankruptcy.

68. Accordingly, pursuant to the terms of the Bankruptcy Orders and the Metro 2 reporting standards discussed, it was inaccurate and materially misleading for DSNB to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

69. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on December 10, 2019. DSNB received notice of the successful discharge through the Bankruptcy Noticing Center on or about December 10, 2019 by first class mail through the Bankruptcy Noticing Center.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

70. Moreover, DSNB accurately reported the Account as being discharged in the Bankruptcy on Plaintiff's TransUnion and Experian credit reports during the same reporting timeframe yet decided to inaccurately report on Plaintiff's EQUIFAX credit report.

71. Rather than using the bankruptcy information sent specifically to DSNB to accurately update Plaintiff's Account on Plaintiff's EQUIFAX Credit Report, which DSNB knew or should have known existed, DSNB continued reporting inaccurately on Plaintiff's credit reports.

72. Therefore, DSNB's inaccurate, materially misleading, and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

73. Through this conduct, DSNB violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX that DSNB knew or should known was inaccurate and materially misleading.

74. *Alternatively*, upon information and belief, DSNB properly reported the Account's status as "Included/Discharged through Bankruptcy" immediately following Plaintiff's Bankruptcy. However, EQUIFAX unilaterally and inaccurately reported a status of "Charged Off" following Plaintiff's Bankruptcy discharge, despite DSNB instructing EQUIFAX to report the status of the same Account as "Included/Discharged through Bankruptcy".

75. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

76. On or about March 2020, Plaintiff disputed DSNB's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying EQUIFAX, in writing, of the incorrect and inaccurate credit information furnished by DSNB.

///

///

77. Specifically, Plaintiff sent a letter, via certified mail, to EQUIFAX (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions. The letter specified the status should report as "discharged through bankruptcy" or the equivalent, no balance owing, and no scheduled payment due.

78. The Dispute Letter further requested that the EQUIFAX and DSNB:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.

- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

79. Upon information and belief, EQUIFAX timely notified DSNB of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

80. DSNB was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

81. EQUIFAX was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

82. On or about April 2020, Plaintiff received an updated copy of his credit report from EQUIFAX.

83. On or about April 2020, Plaintiff received notification from EQUIFAX that they received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of their (re)investigation.

84. DSNB and EQUIFAX continued to report the following inaccurate and derogatory information on Plaintiff's credit with respect to the Account:

- Status: Account Charged Off

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

85. Once again, there was no notation, status update, or any other indication in the tradeline that this Account was discharged in Plaintiff's Bankruptcy.

86. EQUIFAX did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

87. Upon information and belief, EQUIFAX's reinvestigation was not reasonable. More specifically, EQUIFAX should have discovered from its records, including Plaintiff's official dispute letter, that the information DSNB was reporting was inaccurate and materially misleading. EQUIFAX could have easily ascertained that the DSNB account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information. Instead, upon information and belief, EQUIFAX conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting. This has continued to hurt Plaintiff's credit standing.

88. Moreover, EQUIFAX reported the Bankruptcy in its "Public Records" section of Plaintiff's credit report, and reflected that the Bankruptcy was filed in September 2019 and discharged in December 2019. Therefore, EQUIFAX had notice of the Bankruptcy.

89. No other bankruptcies reported in the "Public Records" section of Plaintiff's EQUIFAX report.

90. However, even with notice of the Bankruptcy filing and discharge, EQUIFAX allowed DSNB to report the above inaccurate information despite their obligations under the *White v. EQUIFAX Info Solutions, Inc. et al.* class action settlement terms discussed above.

///

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

91. Rather than using the publicly available bankruptcy information EQUIFAX knew or should have known existed, EQUIFAX chose to allow DSNB to continue reporting inaccurately on Plaintiff's credit reports, while the same account was reported correctly by TransUnion and Experian.

92. Therefore, EQUIFAX's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

93. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

94. Such conduct by EQUIFAX is willful and reckless.

95. Accordingly, EQUIFAX failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

96. Further, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

97. Upon information and belief, DSNB's investigation was also not reasonable. More specifically, DSNB should have discovered from its records, including Plaintiff's official dispute letters, that the information DSNB was reporting was inaccurate and materially misleading. Specifically, DSNB could have simply reviewed the bankruptcy records discussed above and received by DSNB and recognized that their reporting of a "Charge Off" status following the Bankruptcy was inaccurate, misleading, and outdated.

98. DSNB should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy."

99. Accordingly, DSNB failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

a. Failing to remove all of the disputed and incorrect information;

b. Failing to update Plaintiff's Account (history); and

c. Failing to notate, as required, Plaintiff's dispute.

100. Through this conduct, DSNB has violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX, i.e. a consumer reporting agency, that DSNB knew or should known was inaccurate and materially misleading.

101. DSNB and EQUIFAX failed to review all relevant information provided by Plaintiff in the dispute to EQUIFAX as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

102. Due to DSNB and EQUIFAX's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

103. Plaintiff's efforts to correct DSNB and EQUIFAX's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with DSNB and EQUIFAX were fruitless.

104. DSNB and EQUIFAX's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

105. DSNB and EQUIFAX's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, DSNB and EQUIFAX willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

106. DSNB and EQUIFAX's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

///

///

///

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

107. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, DSNB and EQUIFAX failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

## CHASE
### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 426684123437* (THE "ACCOUNT")

108. In an EQUIFAX Credit Report dated February 17, 2020, CHASE reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Status: Account Charged Off

109. There was also no notation, status update, or any other indication in the tradeline as it was reported to EQUIFAX that this Account was included in or discharged in Plaintiff's Bankruptcy.

110. It was inaccurate and materially misleading for CHASE to report the above derogatory delinquencies related to Plaintiff's pre-Bankruptcy obligations after September 2019, because Plaintiff filed for Bankruptcy on September 11, 2019, at which point the automatic stay went into effect and severed CHASE's ability to enforce Plaintiff's purported pre-Bankruptcy obligations against Plaintiff personally in their pre-bankruptcy form.

111. The "Charge Off" and past due status notations by CHASE post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff was still legally liable to repay the alleged debt, incurred new debt during the Bankruptcy, or that Plaintiff reaffirmed the debt notwithstanding the discharge because CHASE's reporting deviated from Metro 2 reporting instructions in these respects.

112. However, Plaintiff did not incur new debt with CHASE during the Bankruptcy proceeding or reaffirm the Account in the Bankruptcy. Plaintiff's debt with CHASE was discharged in the Bankruptcy.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

113. Accordingly, pursuant to the terms of the Bankruptcy Orders and the Metro 2 reporting standards discussed, it was inaccurate and materially misleading for CHASE to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

114. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on December 10, 2019. CHASE received notice of the successful discharge through the Bankruptcy Noticing Center on or about December 10, 2019 by first class mail through the Bankruptcy Noticing Center.

115. Moreover, CHASE accurately reported the Account as being discharged in the Bankruptcy on Plaintiff's TransUnion and Experian credit reports during the same reporting timeframe yet decided to inaccurately report on Plaintiff's EQUIFAX credit report.

116. Rather than using the bankruptcy information sent specifically to CHASE to accurately update Plaintiff's Account on Plaintiff's EQUIFAX Credit Report, which CHASE knew or should have known existed, CHASE continued reporting inaccurately on Plaintiff's credit reports.

117. Therefore, CHASE's inaccurate, materially misleading, and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

118. Through this conduct, CHASE violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX that CHASE knew or should known was inaccurate and materially misleading.

119. *Alternatively*, upon information and belief, CHASE properly reported the Account's status as "Included/Discharged through Bankruptcy" immediately following Plaintiff's Bankruptcy. However, EQUIFAX unilaterally and inaccurately reported a status of "Charged Off" following Plaintiff's Bankruptcy discharge, despite CHASE instructing EQUIFAX to report the status of the same Account as "Included/Discharged through Bankruptcy".

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

120. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

121. On or about March 2020, Plaintiff disputed CHASE's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying EQUIFAX, in writing, of the incorrect and inaccurate credit information furnished by CHASE.

122. Specifically, Plaintiff sent a letter, via certified mail, to EQUIFAX (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions. The letter specified the status should report as "discharged through bankruptcy" or the equivalent, no balance owing, and no scheduled payment due.

123. The Dispute Letter further requested that the EQUIFAX and CHASE:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.
- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

124. Upon information and belief, EQUIFAX timely notified CHASE of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

125. CHASE was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

126. EQUIFAX was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

127. On or about April 2020, Plaintiff received an updated copy of his credit report from EQUIFAX.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

128. On or about April 2020, Plaintiff received notification from EQUIFAX that they received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of their (re)investigation.

129. CHASE and EQUIFAX continued to report the following inaccurate and derogatory information on Plaintiff's credit with respect to the Account:

   • Status: Account Charged Off

130. Once again, there was no notation, status update, or any other indication in the tradeline that this Account was discharged in Plaintiff's Bankruptcy.

131. EQUIFAX did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

132. Upon information and belief, EQUIFAX's reinvestigation was not reasonable. More specifically, EQUIFAX should have discovered from its records, including Plaintiff's official dispute letter, that the information CHASE was reporting was inaccurate and materially misleading. EQUIFAX could have easily ascertained that the CHASE account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information. Instead, upon information and belief, EQUIFAX conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting. This has continued to hurt Plaintiff's credit standing.

133. Moreover, EQUIFAX reported the Bankruptcy in its "Public Records" section of Plaintiff's credit report, and reflected that the Bankruptcy was filed in September 2019 and discharged in December 2019. Therefore, EQUIFAX had notice of the Bankruptcy.

134. No other bankruptcies reported in the "Public Records" section of Plaintiff's EQUIFAX report.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

135. However, even with notice of the Bankruptcy filing and discharge, EQUIFAX allowed CHASE to report the above inaccurate information despite their obligations under the *White v. EQUIFAX Info Solutions, Inc. et al.* class action settlement terms discussed above.

136. Rather than using the publicly available bankruptcy information EQUIFAX knew or should have known existed, EQUIFAX chose to allow CHASE to continue reporting inaccurately on Plaintiff's credit reports, while the same account was reported correctly by TransUnion and Experian.

137. Therefore, EQUIFAX's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

138. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

139. Such conduct by EQUIFAX is willful and reckless.

140. Accordingly, EQUIFAX failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

141. Further, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

142. Upon information and belief, CHASE's investigation was also not reasonable. More specifically, CHASE should have discovered from its records, including Plaintiff's official dispute letters, that the information CHASE was reporting was inaccurate and materially misleading. Specifically, CHASE could have simply reviewed the bankruptcy records discussed above and received by CHASE and recognized that their reporting of a "Charge Off" status following the Bankruptcy was inaccurate, misleading, and outdated.

143. CHASE should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy."

144. Accordingly, CHASE failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

    a.  Failing to remove all of the disputed and incorrect information;

    b.  Failing to update Plaintiff's Account (history); and

    c.  Failing to notate, as required, Plaintiff's dispute.

145. Through this conduct, CHASE has violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX, i.e. a consumer reporting agency, that CHASE knew or should known was inaccurate and materially misleading.

146. CHASE and EQUIFAX failed to review all relevant information provided by Plaintiff in the dispute to EQUIFAX as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

147. Due to CHASE and EQUIFAX's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

148. Plaintiff's efforts to correct CHASE and EQUIFAX's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with CHASE and EQUIFAX were fruitless.

149. CHASE and EQUIFAX's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

150. CHASE and EQUIFAX's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, CHASE and EQUIFAX willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

151. CHASE and EQUIFAX's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

152. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, CHASE and EQUIFAX failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

**BANA**

**INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION**
**RE: ACCOUNT NO.: 431307399980* AND 549033099914* (THE "ACCOUNTS")**

153. In an EQUIFAX Credit Report dated February 17, 2020, BANA reported the following inaccurate, misleading, and derogatory information for the above-referenced Accounts:

- Status: Account Charged Off

154. There was also no notation, status update, or any other indication in the tradeline as it was reported to EQUIFAX that the Accounts were included in or discharged in Plaintiff's Bankruptcy.

155. It was inaccurate and materially misleading for BANA to report the above derogatory delinquencies related to Plaintiff's pre-Bankruptcy obligations after September 2019, because Plaintiff filed for Bankruptcy on September 11, 2019, at which point the automatic stay went into effect and severed BANA's ability to enforce Plaintiff's purported pre-Bankruptcy obligations against Plaintiff personally in their pre-bankruptcy form.

156. The "Charge Off" and past due status notations by BANA post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff was still legally liable to repay the alleged debt, incurred new debt during the Bankruptcy, or that Plaintiff reaffirmed the debt notwithstanding the discharge because BANA's reporting deviated from Metro 2 reporting instructions in these respects.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

157. However, Plaintiff did not incur new debt with BANA during the Bankruptcy proceeding or reaffirm the Accounts in the Bankruptcy. Plaintiff's debt with BANA was discharged in the Bankruptcy.

158. Accordingly, pursuant to the terms of the Bankruptcy Orders and the Metro 2 reporting standards discussed, it was inaccurate and materially misleading for BANA to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

159. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on December 10, 2019. BANA received notice of the successful discharge through the Bankruptcy Noticing Center on or about December 10, 2019 by first class mail through the Bankruptcy Noticing Center.

160. Moreover, BANA accurately reported the Accounts as being discharged in the Bankruptcy on Plaintiff's TransUnion and Experian credit reports during the same reporting timeframe yet decided to inaccurately report on Plaintiff's EQUIFAX credit report.

161. Rather than using the bankruptcy information sent specifically to BANA to accurately update Plaintiff's Accounts on Plaintiff's EQUIFAX Credit Report, which BANA knew or should have known existed, BANA continued reporting inaccurately on Plaintiff's credit reports.

162. Therefore, BANA's inaccurate, materially misleading, and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

163. Through this conduct, BANA violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX that BANA knew or should known was inaccurate and materially misleading.

///

///

///

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

164. *Alternatively*, upon information and belief, BANA properly reported the Account's status as "Included/Discharged through Bankruptcy" immediately following Plaintiff's Bankruptcy. However, EQUIFAX unilaterally and inaccurately reported a status of "Charged Off" following Plaintiff's Bankruptcy discharge, despite BANA instructing EQUIFAX to report the status of the same Accounts as "Included/Discharged through Bankruptcy".

165. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

166. On or about March 2020, Plaintiff disputed BANA's reported information regarding the Accounts pursuant to 15 U.S.C. § 1681I(a)(2) by notifying EQUIFAX, in writing, of the incorrect and inaccurate credit information furnished by BANA.

167. Specifically, Plaintiff sent a letter, via certified mail, to EQUIFAX (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions. The letter specified the status should report as "discharged through bankruptcy" or the equivalent, no balance owing, and no scheduled payment due.

168. The Dispute Letter further requested that the EQUIFAX and BANA:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.
- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

169. Upon information and belief, EQUIFAX timely notified BANA of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

170. BANA was required to conduct a reasonable investigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

171. EQUIFAX was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

172. On or about April 2020, Plaintiff received an updated copy of his credit report from EQUIFAX.

173. On or about April 2020, Plaintiff received notification from EQUIFAX that they received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of their (re)investigation.

174. BANA and EQUIFAX continued to report the following inaccurate and derogatory information on Plaintiff's credit with respect to the Accounts:

- Status: Account Charged Off

175. Once again, there was no notation, status update, or any other indication in the tradeline that the Accounts were discharged in Plaintiff's Bankruptcy.

176. EQUIFAX did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

177. Upon information and belief, EQUIFAX's reinvestigation was not reasonable. More specifically, EQUIFAX should have discovered from its records, including Plaintiff's official dispute letter, that the information BANA was reporting was inaccurate and materially misleading. EQUIFAX could have easily ascertained that the Accounts had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information. Instead, upon information and belief, EQUIFAX conducted a superficial "reinvestigation" and merely doubled-down on their inaccurate reporting. This has continued to hurt Plaintiff's credit standing.

178. Moreover, EQUIFAX reported the Bankruptcy in its "Public Records" section of Plaintiff's credit report, and reflected that the Bankruptcy was filed in September 2019 and discharged in December 2019. Therefore, EQUIFAX had notice of the Bankruptcy.

179. No other bankruptcies reported in the "Public Records" section of Plaintiff's EQUIFAX report.

180. However, even with notice of the Bankruptcy filing and discharge, EQUIFAX allowed BANA to report the above inaccurate information despite their obligations under the *White v. EQUIFAX Info Solutions, Inc. et al.* class action settlement terms discussed above.

181. Rather than using the publicly available bankruptcy information EQUIFAX knew or should have known existed, EQUIFAX chose to allow BANA to continue reporting inaccurately on Plaintiff's credit reports, while the same accounts were reported correctly by TransUnion and Experian.

182. Therefore, EQUIFAX's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

183. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

184. Such conduct by EQUIFAX is willful and reckless.

185. Accordingly, EQUIFAX failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

186. Further, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

///

///

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

187. Upon information and belief, BANA's investigation was also not reasonable. More specifically, BANA should have discovered from its records, including Plaintiff's official dispute letters, that the information BANA was reporting was inaccurate and materially misleading. Specifically, BANA could have simply reviewed the bankruptcy records discussed above and received by BANA and recognized that their reporting of a "Charge Off" status following the Bankruptcy was inaccurate, misleading, and outdated.

188. BANA should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy."

189. Accordingly, BANA failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

    a. Failing to remove all of the disputed and incorrect information;

    b. Failing to update Plaintiff's Account (history); and

    c. Failing to notate, as required, Plaintiff's dispute.

190. Through this conduct, BANA has violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX, i.e. a consumer reporting agency, that BANA knew or should known was inaccurate and materially misleading.

191. BANA and EQUIFAX failed to review all relevant information provided by Plaintiff in the dispute to EQUIFAX as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

192. Due to BANA and EQUIFAX's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

193. Plaintiff's efforts to correct BANA and EQUIFAX's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with BANA and EQUIFAX were fruitless.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

194. BANA and EQUIFAX's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

195. BANA and EQUIFAX's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, BANA and EQUIFAX willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

196. BANA and EQUIFAX's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

197. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, BANA and EQUIFAX failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

### AMEX
#### INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 349991341638* (THE "ACCOUNT")

198. In an EQUIFAX Credit Report dated February 17, 2020, AMEX reported the following inaccurate, misleading, and derogatory information for the above-referenced account number:

- Status: Account Charged Off

199. There was also no notation, status update, or any other indication in the tradeline as it was reported to EQUIFAX that this Account was included in or discharged in Plaintiff's Bankruptcy.

200. It was inaccurate and materially misleading for AMEX to report the above derogatory delinquencies related to Plaintiff's pre-Bankruptcy obligations after September 2019, because Plaintiff filed for Bankruptcy on September 11, 2019, at which point the automatic stay went into effect and severed AMEX's ability to enforce Plaintiff's purported pre-Bankruptcy obligations against Plaintiff personally in their pre-bankruptcy form.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

201. The "Charge Off" and past due status notations by AMEX post-discharge inaccurately and misleadingly suggested (to potential creditors) that Plaintiff was still legally liable to repay the alleged debt, incurred new debt during the Bankruptcy, or that Plaintiff reaffirmed the debt notwithstanding the discharge because AMEX's reporting deviated from Metro 2 reporting instructions in these respects.

202. However, Plaintiff did not incur new debt with AMEX during the Bankruptcy proceeding or reaffirm the Account in the Bankruptcy. Plaintiff's debt with AMEX was discharged in the Bankruptcy.

203. Accordingly, pursuant to the terms of the Bankruptcy Orders and the Metro 2 reporting standards discussed, it was inaccurate and materially misleading for AMEX to report delinquencies following Plaintiff's Bankruptcy filing and discharge.

204. The Bankruptcy Court confirmed that Plaintiff successfully completed the Bankruptcy and entered a Discharge Order on December 10, 2019. AMEX received notice of the successful discharge through the Bankruptcy Noticing Center on or about December 10, 2019 by first class mail through the Bankruptcy Noticing Center.

205. Moreover, AMEX accurately reported the Account as being discharged in the Bankruptcy on Plaintiff's TransUnion and Experian credit reports during the same reporting timeframe yet decided to inaccurately report on Plaintiff's EQUIFAX credit report.

206. Rather than using the bankruptcy information sent specifically to AMEX to accurately update Plaintiff's Account on Plaintiff's EQUIFAX Credit Report, which AMEX knew or should have known existed, AMEX continued reporting inaccurately on Plaintiff's credit reports.

207. Therefore, AMEX's inaccurate, materially misleading, and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

208. Through this conduct, AMEX violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX that AMEX knew or should known was inaccurate and materially misleading.

209. *Alternatively*, upon information and belief, AMEX properly reported the Account's status as "Included/Discharged through Bankruptcy" immediately following Plaintiff's Bankruptcy. However, EQUIFAX unilaterally and inaccurately reported a status of "Charged Off" following Plaintiff's Bankruptcy discharge, despite AMEX instructing EQUIFAX to report the status of the same Account as "Included/Discharged through Bankruptcy".

210. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

211. On or about March 2020, Plaintiff disputed AMEX's reported information regarding the Account pursuant to 15 U.S.C. § 1681I(a)(2) by notifying EQUIFAX, in writing, of the incorrect and inaccurate credit information furnished by AMEX.

212. Specifically, Plaintiff sent a letter, via certified mail, to EQUIFAX (the "Dispute Letter"), requesting the above inaccurate information be deleted pursuant to Plaintiff's Bankruptcy Discharge and corresponding Metro 2 instructions. The letter specified the status should report as "discharged through bankruptcy" or the equivalent, no balance owing, and no scheduled payment due.

213. The Dispute Letter further requested that the EQUIFAX and AMEX:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.
- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

214. Upon information and belief, EQUIFAX timely notified AMEX of Plaintiff's dispute, but they both continued reporting inaccurate, derogatory information.

215. AMEX was required to conduct a reasonable investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

216. EQUIFAX was required to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

217. On or about April 2020, Plaintiff received an updated copy of his credit report from EQUIFAX.

218. On or about April 2020, Plaintiff received notification from EQUIFAX that they received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of their (re)investigation.

219. AMEX and EQUIFAX continued to report the following inaccurate and derogatory information on Plaintiff's credit with respect to the Account:

- Status: Account Charged Off

220. Once again, there was no notation, status update, or any other indication in the tradeline that this Account was discharged in Plaintiff's Bankruptcy.

221. EQUIFAX did not provide notice to Plaintiff that her dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

222. Upon information and belief, EQUIFAX's reinvestigation was not reasonable. More specifically, EQUIFAX should have discovered from its records, including Plaintiff's official dispute letter, that the information AMEX was reporting was inaccurate and materially misleading. EQUIFAX could have easily ascertained that the AMEX account had no further obligation owed on it by reviewing the publicly available and accessible bankruptcy records discussed above, consulting the Metro 2 guidelines for bankruptcy accounts delineated above, or contacting Plaintiff for more information. Instead, upon information and belief, EQUIFAX conducted a superficial "reinvestigation"

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

and merely doubled-down on their inaccurate reporting. This has continued to hurt Plaintiff's credit standing.

223. Moreover, EQUIFAX reported the Bankruptcy in its "Public Records" section of Plaintiff's credit report, and reflected that the Bankruptcy was filed in September 2019 and discharged in December 2019. Therefore, EQUIFAX had notice of the Bankruptcy.

224. No other bankruptcies reported in the "Public Records" section of Plaintiff's EQUIFAX report.

225. However, even with notice of the Bankruptcy filing and discharge, EQUIFAX allowed AMEX to report the above inaccurate information despite their obligations under the *White v. EQUIFAX Info Solutions, Inc. et al.* class action settlement terms discussed above.

226. Rather than using the publicly available bankruptcy information EQUIFAX knew or should have known existed, EQUIFAX chose to allow AMEX to continue reporting inaccurately on Plaintiff's credit reports, while the same account was reported correctly by TransUnion and Experian.

227. Therefore, EQUIFAX's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

228. Accordingly, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

229. Such conduct by EQUIFAX is willful and reckless.

230. Accordingly, EQUIFAX failed to conduct a reasonable reinvestigation of Plaintiff's dispute, as required by 15 U.S.C. §1681i and Cal. Civ. Code §1785.16.

231. Further, EQUIFAX failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b) and Cal. Civ. Code §1785.14(b).

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

232. Upon information and belief, AMEX's investigation was also not reasonable. More specifically, AMEX should have discovered from its records, including Plaintiff's official dispute letters, that the information AMEX was reporting was inaccurate and materially misleading. Specifically, AMEX could have simply reviewed the bankruptcy records discussed above and received by AMEX and recognized that their reporting of a "Charge Off" status following the Bankruptcy was inaccurate, misleading, and outdated.

233. AMEX should have also consulted the Metro 2 guidelines for bankruptcy accounts delineated above to confirm that the proper status following the Bankruptcy was "Discharged through Bankruptcy."

234. Accordingly, AMEX failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b) by:

    a.  Failing to remove all of the disputed and incorrect information;

    b.  Failing to update Plaintiff's Account (history); and

    c.  Failing to notate, as required, Plaintiff's dispute.

235. Through this conduct, AMEX has violated Cal. Civ. Code § 1785.25(a) by furnishing information to EQUIFAX, i.e. a consumer reporting agency, that AMEX knew or should known was inaccurate and materially misleading.

236. AMEX and EQUIFAX failed to review all relevant information provided by Plaintiff in the dispute to EQUIFAX as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

237. Due to AMEX and EQUIFAX's failure to reasonably (re)investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

238. Plaintiff's efforts to correct AMEX and EQUIFAX's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with AMEX and EQUIFAX were fruitless.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

239. AMEX and EQUIFAX's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

240. AMEX and EQUIFAX's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, AMEX and EQUIFAX willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

241. AMEX and EQUIFAX's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

242. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, AMEX and EQUIFAX failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

**CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. §§ 1681 ET SEQ.**

**[AGAINST ALL DEFENDANTS]**

243. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

244. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

245. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

246. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

## COUNT II

### VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
### CAL. CIV. CODE § 1785.1 ET SEQ.
### [AGAINST ALL DEFENDANTS]

247. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

248. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

249. As a result of each and every negligent violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(1) from Defendants.

250. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to damages as the Court may allow pursuant to Cal. Civ. Code § 1785.31(a)(2) against Defendants, including punitive damages of $100-$5,000 per willful violation.

251. Because Furnisher-Defendants are partnerships, corporations, associations, or other entities, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Furnisher-Defendants are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Thus, Furnisher-Defendants violated Cal. Civ. Code § 1785.25(a).

C.O. LAW, APC
2484 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;

- An award for costs and reasonable attorney's fess, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Defendants;

- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Defendants;

- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Defendants;

- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Defendants; and

- Any and all other relief the Court deems just and proper.

C.O. LAW, APC
2404 BROADWAY, SUITE 150
SAN DIEGO, CA 92102

Dated: June 5, 2020                                   Respectfully submitted,

                                                      **C.O. LAW, APC**


                                                      By: /s/ Clark Ovruchesky
                                                          CLARK OVRUCHESKY, ESQ.
                                                          ATTORNEY FOR PLAINTIFF

### TRIAL BY JURY

252. Pursuant to the seventh amendment to the Constitution of the United States of

America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: June 5, 2020                                   Respectfully submitted,

                                                      **C.O. LAW, APC**


                                                      By: /s/ Clark Ovruchesky
                                                          CLARK OVRUCHESKY, ESQ.
                                                          ATTORNEY FOR PLAINTIFF